The next case is GEICO v. Whiteside, and Mr. Wasmuth is here for GEICO, Mr. Lowry for Whiteside. You may proceed. Thank you. May it please the Court. We ask for judgment in favor of GEICO. The insurers and the policyholders' failure to inform GEICO of the psychosis lawsuit breached the policy language mandated by Georgia law and prejudiced GEICO in accordance with the voided the coverage, and there can be no bad faith liability without coverage told otherwise absolves the insurer and the policyholders of all responsibility. When did coverage end? When did coverage end? Did the coverage end when the default was entered? No. It entered at some point prior to that when Ms. Whiteside, or not Ms. Whiteside, Ms. Winslet. When GEICO refused the claim to settle for $30,000, did Winslet have coverage? Yes. And she continued to add coverage. We had accepted coverage, and she continued to add coverage, but she lost the coverage when she didn't timely inform GEICO of the lawsuit, which would have allowed GEICO to provide her with a defense and defend the claim. But I don't see any cases that you cite that hold that a bad faith claim accrues when the judgment enters. You don't have any cases to support that, right? Well, it's in the nature of the bad faith claim. The claim is we expose the policy or the insurer to an excess judgment by not settling. There's no excess judgment until there's an excess judgment. If we had entered this case and defended it, there might have been a $25,000 judgment, in which case there's no bad faith liability. If, put it this way, if Ms. Winslet, the day after we ... It wasn't instructed that way. The jury was instructed otherwise, and the jury in answering the interrogatories said that the refusal to settle for $30,000 was the proximate cause of the claim, right? Well, we can talk about why that's not true, why it's not a proximate cause. But for now, I mean, there's no ... If the day GEICO had countered and rejected the policy demand, Ms. Winslet couldn't have gone into court and sued GEICO and say, you acted in bad faith by not saying yes. It's not bad faith until there's an excess judgment. And GEICO was prepared to defend Ms. Winslet and evaluate the case correctly, that it wasn't a $30,000 case. What's your best case that sets that time that you're discussing, that it's not bad faith until the excess judgment is issued? I'm not sure I can remember from our brief what the best case is on our point. We do cite- Oh, the case you cite is Beacon versus the Catholic Diocese of Savannah. Is that the case? Well, that says, if I remember correctly, there's no bad faith without coverage, which is, I think that's what we cited for. And I might come back on rebuttal and look at our brief and remember the case we cited. But, I mean, it comes from the fact that if you can't sue us the day we countered and say there's bad faith, when can you sue us? You can't sue us until there's an excess judgment. So by definition, the claim couldn't have been crude until there was an excess judgment. There's a Georgia Supreme Court case. It's S. General Insurance versus Holt. And it seems clear from that case that when deciding whether the insurer breached the duty to settle, the jury should consider the circumstances present when the bad faith occurred. Right. That's in evaluating whether or not to say yes to the offer. Based on the facts you know, was it appropriate to say yes or no to the offer? But you still have to have the excess judgment. If you evaluate the case and say we think it's worth $12,000, which is what GEICO did, if we defend the case and prove we're right, well, then there wasn't bad faith. The bad faith claim doesn't exist until there's an excess judgment. It can't because that's what we're trying to protect the insured from, an excess judgment. To answer Judge Grant's question, you're going to tell us on rebuttal? The Georgia case that says that? I'll look and see what we said in our brief, Judge. Okay. And you disputed at the trial court level whether or not GEICO acted in bad faith, but you're no longer legally disputing that at this court, correct? That's correct. Well, to that extent, yes. Our defenses are approximate cause, due process, and the lack of coverage at the point in which the excess judgment was entered. I think you can see why there has to be coverage all the way to the end for there to be a bad faith claim. Consider a case just like this one, where instead we know the lawsuit, we enter defense, but Ms. Winslet says, I don't like lawsuits. I don't like lawyers. I'm not going to cooperate. I'm not going to show up for my deposition. And the answer is stricken as a discovery sanction. Can she still at that point make that, and there's an excess judgment, can she make that a bad faith claim then, saying you should have settled way back when? Judge, in his order, says there was enough evidence here that a jury could rely upon to conclude that Ms. Winslet's actions in throwing away the summons was foreseeable by GEICO because they were, they might not have been aware of the lawsuit, but they were aware of the claim. They told her if they were resolving the matter with Guthrie's counsel, they did not tell her if there was a lawsuit filed to forward any complaint to GEICO. They never provided Winslet with a copy of the policy, even though it knew she was not the policyholder and thus would not have it. Those appear to be significant facts that the court could rely upon to conclude that the- The key is- I mean, the bad faith claim occurred when they refused to settle the case. That gets to the proximate cause issue. Um, intervening proximate cause. They cited a 2018 letter, this Ironshore case, which said something interesting about intervening proximate cause. An intervening proximate cause is not sufficient and independent if its probable and natural consequences would reasonably have been anticipated, apprehended, or foreseen by the original wrongdoer. Okay, but proximate cause determinations are for the jury, right? They're matters of policy that can be decided as a matter of law. The Georgia Supreme Court said that in the Goldstein-Garber case. And that's our position, that insurer- insurer, knowing what GEICO knew in May of 2012- Did GEICO's counsel say that issue shouldn't go to the- proximate cause shouldn't go to the jury because it's an issue of law? The limit of it, we say it's a matter of law that an insurer, knowing what GEICO knew, could not- it was not probable that Ms. Winslet would throw away the summons in complaint and not tell GEICO. Can- can- can something be a partial intervening cause? Or if there's an intervening cause, is it a- is it an all or nothing argument? It's an all or nothing argument. And so, did you argue- I think you did argue intervening cause to the district court. Absolutely. As a legal matter? Yes. And I think that was rejected on summary judgment or- Summary judgment and JMOL. I think the error the judge made here is that he- and he says in his JMOL order that GEICO should have known about Ms. Winslet's life- knew about Winslet's life circumstances, knew how she lived, about her lack of education, about her drug and other mental health issues. But that's just not in the record. The GEICO claims adjuster never spoke to Ms. Winslet. There's nothing in the claims notes. We had no reason to think that Ms. Winslet would have done what we say was probable. That an insurer who thinks they got a covered claim, when sued, would call up the insurance company and say, I thought you were handling this. How come I got sued? Not throw the summons in the trash and say, I don't need to deal with this. So I think if I'm a juror, I think I would be likely to agree. But isn't there enough evidence for a reasonable jury to conclude that perhaps Ms. Winslet felt that GEICO was already handling it? You have to look at it from GEICO's perspective and what GEICO knew.  The jury saw Ms. Winslet and heard from her. But GEICO didn't hear any of that in May of 2012. All it knew was she was an insurer who'd been in an accident and corresponded with her, talked to the policyholder, talked to her policyholder's fiance, talked to a witness. We never knew anything about Ms. Winslet's life circumstances. And the verdict forum asked the jury about proximate cause, but obviously said nothing about intervening cause. You didn't make any objection to the jury instructions, right? I don't think there was an objection on that issue. It was raised in the JMORL motion. We said this shouldn't go to the jury because a reasonable insurance company could not have thought it probable that an insured would throw away a summons in complaint. I mean, I think it says something about this case that we cannot find, and your very efficient law clerks may have proved me wrong, but we can't find a single bad faith case where the insurance company was never told about the lawsuit. We're told after the fact, after a default judgment that we weren't at, we have no transcript of, no one seems to remember what the evidence was. All we know now is no one seems to think this is a $2.9 million injury. Could the insurance company have moved in state court to set aside the default judgment? We tried, and that's cited in the record, and went all the way up to the Georgia Court of Appeals, and they said, no, can't set aside the default. We're just stuck with this $2.9 million that their own expert said, the biggest number he would put on this case was $500,000. And did he make the same statutory argument about a lack of coverage before the Georgia Court of Appeals that you're making here? You mean the trial court? Yes, repeatedly. I mean, it was... No, I mean before the, in the Georgia courts. Did he make that... Coverage was not an issue at that point. The only issue in the Georgia Court of Appeals was, can we set aside the default? So we had to enter a defense under a reservation of rights for Ms. Winslet, and I'll look up that case on rebuttal. Thank you, judges. All right. Larry. Good morning, Your Honors. It seems to me that for GEICO to prevail on any one of its three arguments, they've got to get you to ignore two things. They've got to get you to ignore the fact that the damage to Bonnie Winslet is the default judgment. That's a fixed, certain historical fact of liability she has to pay. The damages to Bonnie Winslet are not whatever the cyclist injuries might be as valued by a second jury. The second thing they have to get you to ignore is the evidence that you listed out, Your Honor, Judge Wilson, that the evidence supports the jury's finding that the default judgment is GEICO's fault. That GEICO is 70% to blame for the default judgment. An impartial answer to your question, Judge Grant, the instructions, although perhaps not the verdict form, but the instructions on volume four, page 102, say even if you find GEICO negligent, you can't fine for Winslet unless you find that GEICO's negligence caused the default judgment. And here the evidence supports that finding. In addition to what you listed out, Judge Wilson, I would highlight two other pieces of evidence. One of them is that we presented expert testimony, volume three, page 203, from a fellow named Peter Noe. He was a claims expert and he testified that the letter they sent Winslet, the one that said, we will be handling this directly with Charles Gower, and the failure to inform Winslet of any obligation to forward the suit papers if she heard from Charles Gower, that that doesn't meet the standard of care in the industry. And you might start that in your notes because I don't think we did a good job of pulling that out in the brief, but it is an additional piece of evidence that creates a jury issue. The other thing that I would note is their own claims manual says, remind the insured of this obligation. I think my colleague may say in rebuttal, well, the claims manual says do that only if you anticipate that suit may be filed. But if you read the exhibit, it says you should remind them in all instances and you should remind them in writing if you anticipate that suit may be filed. I don't think this is legally relevant, but isn't it pretty bad behavior on the part of a lawyer when you're in conversations with an insurance company about a proposed settlement and you decide to sue about that same case and despite calls from the insurance company, you never notify them about the suit? I don't know that it is. I know that GEICO's obligation was to put forth its best valuation of the claim, not simply negotiate and try to save money, but any allegation of bad conduct or at least unhandsome conduct would have been aired out in the state litigation that culminated in that default judgment affirmed by the Georgia Court of Appeals. I'm not understanding. Are you saying it's okay to be deceptive about filing a lawsuit while you're talking to the other side? I'm saying that I know of no law that prevents an attorney from making a policy limits demand and when the insurer refuses it by countering, deciding you're simply going to file suit and not continuing negotiations. I don't know of any law that prohibits that. I agree there's not a law, but I don't think you're going to get very far by endorsing that behavior. Well, I am not here to endorse that behavior. I'm here simply to answer the claims of error that they have raised in this bad faith lawsuit. How soon did he file the lawsuit after the demand was rejected? It was pretty fast. The lawsuit was filed May 29th. The demand letter was written May 15th. Two weeks? Yes, sir. Yes, Your Honor. That's right. So when, turning to things that do legally matter, when do you say the relevant coverage period is? I assume you say it's the time of the default judgment, or the time of the rejection of settlement, but why aren't they correct that you can't have a default judgment? You can't have a bad faith claim until there's a default judgment. Why isn't that the time when we consider whether... I don't know that your damages would be fixed until you had an excess judgment, but the bad faith clearly occurred at a time they had all their duties in place to Bonnie Winslet, and I don't even think they dispute that. Could Winslet have sued for, or... Could there have been a suit for bad faith the day after the settlement was rejected? Not a suit for damages for the excess judgment. If, for example, she was having to hire a lawyer or something like that, I could see perhaps other damages accruing, but not for an excess judgment that hasn't occurred. But if the judgment was for $15,000, there would have been no bad faith. There would have been no damages. There would have been bad faith. Why would there have been bad faith if it was less than the offer? Because bad faith is assessed at the time the offer is refused. The damages occur from an excess judgment, but you can refuse an offer in bad faith and get lucky. The whole principle of bad faith law is you're not supposed to gamble. But what if you were right about the valuation? Then the jury will determine whether you were negligent in turning down the demand, which this jury did, and they don't challenge the sufficiency of evidence for that finding on appeal. Now, I do want to talk about the policy notice provision. They make the same argument really two ways. They say that her failure to forward the suit papers breached the policy and terminated coverage, and that her failure to forward suit papers was an intervening cause under tort law. And I'll deal with both of those. But the overarching answer to both of those points is if you cause your insured to default, you can't invoke that failure to avoid coverage or to avoid tort liability. And remember, we are all here to honor the jury's finding that GEICO is to blame for the default judgment. They don't like it. They argue eloquently against it. All of their arguments are jury arguments, and they are perhaps arguments why the jury accorded 30% of the fault to Dottie Winslet. Do you think intervening cause is a legal question or a factual question? It is overwhelmingly a fact question under Georgia law. And that's recognized in the principal solutions decision that we cited to you, I think, yesterday by notice of supplemental authority. It's a decision this week from a panel of this court under Georgia law. And maybe I'll bridge straight to that issue since you raised it. Counsel reads from that decision, the Georgia law that says that an intervening cause is not sufficient and independent if its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrongdoer. Now, if you look at the way that language is applied in context by this court and by the Georgia courts, what probable means in that context is sufficiently probable to be reasonably foreseen. It doesn't mean more likely than not. I mean, the consequences of a breach, if you apply that probably standard, you would probably eliminate most negligence cases. It is not more likely than not when you run a stop sign, you're going to hurt someone. It's not more likely than not when you engage in celebratory gunfire, you're going to hurt someone. It's not more likely than not that if you fail to light your apartment complex, somebody's going to be assaulted. But it is sufficiently probable to be foreseeable and you're liable. And if you look at the way this court applied that language in the principal solutions case, it is in terms of foreseeability. And the court held actually as a matter of law for the plaintiff that the intervening events couldn't break the causal chain because they were both foreseeable consequences. And then they note Georgia law has held that intervening acts were foreseeable in far more attenuated circumstances. And they cite a case, this panel cites a case where someone loans someone a car with a bad door latch. And the Georgia court said, yeah, it is foreseeable, or so a jury could find, that they might try to fix that door latch with some sort of rigged up contraption and be hurt. Well, if that's foreseeable, if that's a jury issue, what we're talking about is clearly a jury issue here. If Geico had added a clause to the letter that they sent to Ms. Winslet, and it said, along lines of, we will handle these claims, comma, but please let us know if you're sued. Right. Would your argument be gone? And would you concede that Geico is not liable? I think I'd have a lot harder case. I wouldn't want to concede that without going back and thinking about what else I might be able to argue in the record. But I readily acknowledge that as a harder case. Now, let me engage in the same thought experiment in a different direction. Let's suppose the letter was so crystal clear that everyone in this courtroom would agree that it said, you know, Ms. Winslet, we've got this. We're handling this directly with the attorneys. Don't worry if you receive suit papers. You can throw them away. Something that even my colleague would concede clearly tells her to do nothing. Under those circumstances, could Geico possibly invoke the notice provision of the policy or possibly argue intervening cause to defeat its liability? Of course not. They caused that. So if you're with me there, then all you need to do is think, okay, is there evidence to support the jury's finding that this letter is essentially the functional equivalent of an instruction to do nothing? Or at least that Geico is 70% at fault. I wonder if there's an issue of Georgia law that really neither one of you has raised. Well, you've raised it, but not as a potential certified question, which is at what date are we looking for whether coverage exists or not? You say we need to determine whether coverage exists at the time of the settlement demand, which of course it did. Right. They say whether coverage existed at the time of the default judgment. Perhaps they'll give me a case that establishes which question that is, but unless we've got a case, I'm wondering. That seems pretty crucial here. It's not. It has nothing to do with the case. It doesn't matter when the claim accrues if they cause the lapse of coverage. And so let me give you an example. They cite a case where there was no bad faith because coverage lapsed because the insured didn't pay the premium. Okay. Now, if for some reason that failure to pay the premium had been the insurance company's fault, they said, hey, you're paid up. You don't need to do anything else. Something like that. If the insurer causes the lapse of coverage, which is what the jury found, in other words, caused the lack of notice, then it can't possibly terminate the insurance company's liability. That's just basic contract law. Like if you look at the One Beacon case they cite, the One Beacon case was a case where the evidence did not support a finding that the insured was justified in delaying its notice to the insurer. But that case recognizes that that can be a fact issue. Here, the jury found her justified, or at least 70% justified under the allocation of fault, in doing what she did, which was not forwarding the suit papers. That's the reason why this question about accrual doesn't matter. Now, it's not hard, by the way, to have a claim, a contract claim, which is what an insurance claim can be, where you have a contract in place at day one and it's breached. The contract terminates, say, of its natural term on day two, and the damages from that pre-termination breach don't accrue until later. Well, under those circumstances, you clearly have a breach of contract claim and it's no answer to say, oh, but wait, by the time you were damaged, the contract had ended. No, you caused those damages by your pre-termination breach, which is what GEICO did here. You don't have to go that far because GEICO caused the failure to give notice. Now, on the certification question, I do want to say this. They have alternatively fallen back on that request. The problem with their certification questions is all of them ignore the evidence and the jury's findings. To certify a question of the Georgia Supreme Court, you'd have to certify something like this. If an insurance company negligently fails to settle for policy limits and then causes its insurer to default in a subsequent lawsuit, can the insurer nonetheless rely on that default that it causes to avoid liability as a matter of law, either under policy language or tort law? We wouldn't have to go that far if we certified the issue to the Georgia Supreme Court. We could simply ask the Georgia Supreme Court, when does a bad faith claim accrue? Does it accrue when the insurer refuses to settle or does it accrue when the underlying judgment enters? But the problem with that is that's not going to tell you the answer in this case. That is a hypothetical question of the sort you wouldn't answer and I don't believe they will answer for exactly that reason. And the reason is, and I know I've said this a lot, but it's my most important point and I'll die on the hill with it, which is the evidence showed and the jury found that Geico is the reason she didn't forward the suit papers. I cannot believe that the Georgia Supreme Court is going to hold or that you would hold that if an insurer causes an insured to do something that allegedly terminates coverage that they can then invoke that to avoid liability. That's your answer in this case. That academic question about timing can be decided in another case. Didn't she say that the reason she didn't do it is because she was on drugs and out of it and threw it away? No, Your Honor. Not the reason? No, Your Honor. She said that she did it. She multiple times said that she did it because the Gowers said they were handling the matter. And that is pages 63 to 64 of the transcript, volume two, page 65 of the transcript, page 118, 132, page 77. All those are cited in our brief. But no, the testimony was and the jury found she did it because lawyers said we're already handling this directly with the lawyers. I mean, sorry, Geico said that. And look, I would be tone deaf if I didn't understand that there are aspects of this case you guys aren't crazy about, right? I get that. But what we're here about is whether these jury's findings were supported by the evidence. And they were. And anything else in the case that you might not be delighted about happened in the Georgia state court system and it was resolved by the Georgia Court of Appeals. What about the district court's conclusion that it was important that Geico should have known that a person in Winslet's condition perhaps would not be forthright about if the lawsuit was filed? So I know that the district court said that, but that does not mean that was part of the jury's rationale. And what I would say that the evidence that Judge Wilson listed and that we've highlighted in our brief would say that even without hindsight, an insurance company could reasonably anticipate that a lay person like Winslet, who has a massive difference in sophistication experience from Geico, wouldn't forward the suit papers. That is a finding that is supported by the evidence. If insurance companies would assume that anyone with a massive difference in sophistication wasn't going to send them the papers, then insurance companies would never get papers, right? Well, I don't think that's necessarily true because I've got other evidence. Insurance companies don't always write letters that say we're handling this directly, letters that don't remind the insured of their obligations. And remember, she was an additional insured. She didn't have the policy. They had no reason to believe she even had the policy language that if she had gone through and read would have contained that obligation. But the other thing about this hindsight argument is, you know, they interjected all the facts about Winslet at trial and they never said or requested any sort of instruction. Like, by the way, you know, Your Honor, don't let the jurors consider Winslet's state of affairs in deciding these issues. There's not an error there that's relevant to this appeal. The red light's on. Are there additional questions I can answer? Appearing not, I will take my seat. Thank you.  Mr. Wasmuth, you've reserved some time for rebuttal. Judge Grant, to your original point, at page 34 of our opening brief, we cite an Alabama case and a Minnesota case in Couch on Insurance, which says the majority of states follow the rule that a cause of action for a bad faith failure to settle accrues upon entry of the excess judgment. And also the Cawthorn case from this court, an unpublished decision involving Florida law that's in our 29J letter, also stands for that proposition. But we're not bound by unpublished opinions. You can look at the under, you can look at the sites, other sites in Florida cases for that proposition too. What about Georgia cases? We could not find a Georgia case on that. We rely upon what we cited in Couch on Insurance. I think the issue here is, I think it's quite a fantastic argument they're making in that they're saying, if we send a letter that says, we're handling this, Paul says, we're going to handle this directly with a lawyer. And the insured can just throw up our hands and say, I don't need to do anything else. I can ignore suit papers. I can ignore everything. That is not a probable consequence of GEICO's conduct in not accepting the policy, not accepting the policy limits demand. I mean, if we have, we don't know anything about any special circumstances from Ms. Winslet. She's just another insurer. And if we tell an insurer, we're handling a claim, they can then say, well, I don't have to answer the suit papers. I can just let it go into default despite what the summons says on its face. I can let it go into default and it's all good. That is a terrible position. That is a terrible rule of law. And a jury can't be allowed to say that because we end up here with GEICO having to deal with this, I'll put it plainly, a fundamentally unfair situation of having to deal with this $2.9 million default judgment that nobody thinks is a reasonable estimate of the cyclist's damages, but it's treated, it's stamped and printed on the jury form. Is it fair that GEICO rejected a $30,000 offer and offered to settle the case for $12,409 knowing that Ms. Guthrie's hospital lien would swallow $10,000 of it, leaving with just $2,500 for future costs for pain and suffering after sustaining a severe injury to her hip and her chest, a pain scale of eight out of 10, $10,000 in medical expenses, clear liability, and Guthrie's attorney informed GEICO that it expected that the potential judgment would be in excess of the policy limits? We don't know that, Judge, because we never got the chance to defend the case. And if we would have defended the case, it wouldn't have been a $2.9 million judgment and it might have been less than $30,000. And it's fundamentally unfair to tag us with that number without having the chance to do what we were obligated to do, enter defense and defend the case. All right, all right. I think we have your arguments. Thank you, counsel. Court will be in recess until nine o'clock tomorrow morning.